HOUSTON & T. C. R. CO. et al. v. ROBERSON.

(Court of Civil Appeals of Texas. Texarkana. June 1, 1911. Rehearing Denied June 22, 1911.)

1. FALSE IMPRISONMENT (§ 2*)—CIVIL LIABILITY—NATURE OF ACT.

In an action against a railway company, its local commercial agent, and an officer employed by the company for false imprisonment, evi-

dence that while plaintiff agreed to take a trip with the officer, when the time came for starting, he refused to go and was compelled to go, justified a charge that the officer in taking plaintiff on the trip to various stations was falsely imprisoning plaintiff.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 1; Dec. Dig. § 2.*]

2. FALSE IMPRISONMENT (§ 2*)—CIVIL LIABILITY—ELEMENTS.

If plaintiff voluntarily went on a trip with defendant officer employed by defendant railroad company, there was no false imprisonment, since false imprisonment is based on detention of another against his consent and without express authority of law.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 1; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol, 3, pp. 2657–2661; vol. 8, p. 7660.]

3. FALSE IMPRISONMENT (§ 2*)—CIVIL LIABILITY—ELEMENTS.

Where plaintiff was falsely detained against his consent by defendant officer employed by defendant railroad company, he did not have to be under legal arrest to make the officer liable for false imprisonment.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 1; Dec. Dig. § 2.*]

4. FALSE IMPRISONMENT (§ 40*)—ACTIONS—INSTRUCTION.

In an action for false imprisonment against a railroad company, its local commercial agent, and an officer employed by the company, where one of the acts complained of was the incarceration of plaintiff in a calaboose by a deputy constable, an instruction that if the defendant officer did not procure aid, or assist the deputy in arresting and imprisoning plaintiff, but ratified and consented to it, and in so ratifying the acts of the deputy constable, he was the agent of either of the other defendants with authority to ratify the acts, then the other two defendants would be liable for the act, was erroneous, as against the other two defendants, where there was no contention that the deputy constable was acting independently for the company or the local commercial agent, nor any testimony that the defendant officer had any authority from either of the other defendants to ratify the act of the deputy constable.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 119; Dec. Dig. § 40.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by S. L. Roberson against the Houston & Texas Central Railroad Company. and others. From a judgment for plaintiff, defendants appeal. Affirmed as to defendant Bell, and reversed and remanded as to the other defendants.

Claiming that he had been falsely imprisoned by Bell, acting by agreement with Noble and a special officer of the railway company, and that through each of them as employed and authorized agents, the Houston & Texas Central Railroad Company was responsible for the acts, the appellee sued Bell and Noble and the railway company, and a verdict was returned in his favor against Bell and Noble individually and the railroad company for actual and exemplary damages. By a systematic course of pilfering, in which several people were connected, much mer-

chandise freight was being taken from the depot of the railway company at Ft. Worth. Noble, who was the general commercial agent of the company at that place, began an investigation of the pilfering, and later informed Bell, who was an officer of the city of Ft. Worth, that he suspected appellee, an employé at the depot, of being in some way connected with the theft, and asked him to watch appellee. Subsequently Bell reported to Noble that appellee had made a voluntary statement to the chief of detectives of the city concerning the pilfering, and that there were some eight persons connected with it. Noble then went to see appellee, and sought to have him make a statement to him respecting the stealing, and who was connected with it. Appellee made a statement to Noble, but denied that he had any connection with the pilfering, except that at one time he took some overalls. Noble then wrote the general superintendent of appellant company, and informed him of the situation, and told him of the statement made by appellee, and requested that a competent officer be detailed by him to come to Ft. Worth and work in connection with the local officers to further ferret out the course of stealing. The superintendent made the detail, and the officer so sent reported to Noble and worked under general directions first given by the superintendent. To aid the special officer sent by the superintendent, Noble, continuing to act in the investigation, then applied to the police commissioner of the city to have Bell specially and regularly assigned to the work of assisting the special officer of the company in ferreting out the offenders. This request of Noble's was granted, and the railway company thereafter paid Bell all his expenses and for his services rendered. Several persons were suspected of being connected with the stealing, but no evidence was obtained sufficient to warrant making any complaint and arrest. Bell and the special officer sent by the superintendent agreed among themselves, as the record admittedly shows, that, if appellee could be gotten away from Ft. Worth, he would be from under the influence of others suspected, and would probably give information or confess concerning the theft and those suspected of being connected with the offense. In furtherance of this agreement, and by preconcerted plan between the special officer and himself, Bell and the special officer, on December 10, 1907, forcibly took appellee on the train from Ft. Worth to Dallas, and from Dallas to Houston, thence to Humble and back to Houston, and there detained and put him through a "sweating" process, as explained in detail by the evidence. Appellee was detained and restrained of liberty by Bell and the special officer, as the record admittedly shows, for about 17 days, without any authority of law for the purpose, and with the intention of inducing and compelling appellee to make a confession or give information to these parties as to the offenders and the system by which the merchandise freight was being taken from the depot at Ft. Worth. The record conclusively establishes that being taken on the trip and the continued detention were against the consent of appellee. While at Humble, which was included in the trip above, appellee was actually confined in the calaboose one night and a part of two days by a deputy constable there without probable cause or warrant or authority of law. The evidence is sufficient to warrant the finding by the jury, as involved in their verdict, that the arrest and confinement in the calaboose by the deputy was a part of the arrangement and ruse of Bell and the special officer, acting together with the deputy, to compel appellee by duress to make disclosure of the offenders in the pilfering at Ft. Worth.

Baker, Botts, Parker & Garwood and Spoonts, Thompson & Barwise, for appellant Houston & T. C. R. Co. C. M. Templeton, for appellants Bell and Noble. Baskin, Dodge & Baskin and Lattimore, Cummings, Doyle & Bouldin, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] After the jury had been in retirement to consider of their verdict, they made written request of the court for information, and the court gave the following special charge: "I charge you that Ben U. Bell in taking S. L. Roberson from Ft. Worth to Dallas, from Dallas to Houston, from Houston to Humble, and from Humble to Houston under the facts in this case, was falsely imprisoning the plaintiff, S. L. Roberson." Each of the appellants excepted to this instruction, and they predicate error thereupon upon the contention that the evidence made an issue of fact as to whether appellee had agreed or consented to go on the trip with Bell. Of course, if appellee voluntarily went on the trip with Bell to and from the places mentioned, then, as a matter of law, there was no false imprisonment as to the trip. False imprisonment under the statute and as a condition of civil liability is based on detention of another against his consent and without express authority of law. But we do not find any evidence in the record even indicating in the remotest degree that appellee went on this trip voluntarily and without any compulsion. Appellee's testimony throughout was positive and clear that he was forcibly and against his consent taken and carried on the trip in question. And the testimony of Bell and Wheeler, who were the only other witnesses in this respect and who were the parties who planned and executed the trip, admits and affirms the fact to be true that appellee was falsely imprisoned by them. Appellants only rely upon certain parts of the testimony of Wheeler and Bell as raising the issue of consent by appellee to go on the trip. They refer to that part of the testi-

mony of Bell wherein he stated what occurred between him and appellee on the morning of the day that appellee was taken from Ft. Worth on the train. Bell said that on the morning of December 10, 1907, he went to appellee's house, and appellee's wife told him that he had gone to the house of Mr. Jones. Bell went up there and inquired of appellee "if he would go to Dallas with him to identify Walter Taylor, and he said he would, and was to meet him at the T. & P. depot at 3 o'clock that afternoon." This is all his testimony going to show any consent on appellee's part. But Bell himself admits that when 3 o'clock came appellee refused to go, and that he and the special officer and another officer compelled him to go on the trip. And, to quote Bell's own language, "I would not have let that nigger get off the train if I could have prevented it. If he had started to get off the train, I would not have let him. If he tried to get away, I would not have let him." He further admitted that "he (meaning the special officer) told me the plan that I was to take this nigger over to Dallas on the idea that he was to identify some nigger, then from Dallas to Houston." "It was my purpose," he admitted, "to get Steve (appellee) away from Ft. Worth." So, if appellee did agree in the morning to go to Dallas, it is conclusive that before and at the time set he withdrew his consent, and Bell knew it and compelled him to go; and in Bell's own admission there is found ample evidence corroborative of appellee that appellee was held in imprisonment on the train. That portion of the testimony of the special officer wherein he stated that appellee told him "that he (appellee) had gone with Mr. Bell from Ft. Worth to Dallas, then to Houston, then to Humble, where a drunken constable had arrested him on a charge of vagrancy so as to hold him until the constable could find out whether or not he was wanted on a charge of burglary," is perfectly consistent, and not in the least inconsistent with all the evidence that appellee did not consent to go on the trip mentioned. The assignment is overruled.

[3] If appellee was falsely detained against his consent by Bell, as the evidence conclusively shows, then he did not have to be under legal arrest to make Bell liable for false imprisonment, and the court did not err, as complained of in the second assignment, in instructing the jury that appellee "did not have to be under arrest by Bell" in order to hold him liable. There was no contention in the evidence that Bell had appellee under legal arrest.

We do not find reversible error in the third assignment; and it is overruled.

[4] On the issue of the incarceration of the appellee in the calaboose at Humble by the deputy constable there, the court in-structed the jury that even though Bell did not procure, aid, or assist the deputy in arresting and imprisoning appellee, but ratified and consented to it, and in so ratifying the acts of the deputy constable he was the agent of either of the other defendants, with authority to ratify the acts, then the other two defendants would be liable for the act. Appellant Bell does not complain of the charge, and properly could not. The railway company and Noble both complain of the same. The error complained of is in making Noble and the railway company liable through ratification by Bell of the wrongful act of the deputy constable. There is no contention in the evidence that the deputy constable was acting independently for the company or Noble, nor is there any testimony showing or tending to show that Bell had any authority from either of the appellants to ratify the act of the deputy constable. If the proof was sufficient to satisfy the jury that Bell had procured, aided, or assisted the deputy constable in wrongfully arresting and incarcerating appellee, then both Bell personally and the company through his agency were liable, and no just complaint could be urged to the instruction. But the charge went further and authorized a verdict against the company and Noble, even though Bell did not procure, aid, or assist, if Bell subsequently ratified the prior independent acts of the deputy in arresting and incarcerating appellee. It was an issue of fact as to whether the deputy was acting in conspiracy with Bell and the special officer, or was acting on his own initiation and independently in the arrest and incarceration of appellee. Hence there was error. There is neither pleading nor proof that Bell was acting as the agent of Noble. And the evidence does not tend to show or connect Noble, who was not present, with any part of a plan to arrest and incarcerate appellee at Humble. The assignment as to Noble and the railway company must be sustained, and this necessitates a reversal of the judgment as to these two appellants. As to appellant Bell, however, the judgment must be affirmed. The judgment below undertakes, in conformity with the verdict of the jury, to specifically fix the amount of the recovery between the defendants. No cross-assignment is filed by appellee complaining of this action of the court, and we cannot disturb it. The judgment as rendered for appellee against appellant Bell, as it should properly be construed, was for $25 actual and $600 exemplary damages. Such amounts, under the evidence, were authorized, and not in fact excessive.

The judgment, therefore, as rendered against Bell will be affirmed, and as to the other two appellants the judgment will be reversed and the cause remanded. One-half of the costs of appeal will be paid by appellee, and one-half by appellant Bell.