**A. HARRIS & CO. v. CALDWELL et al.***
(No. 9391.)

(Court of Civil Appeals of Texas. Dallas. June 20, 1925. Order Reforming and Rendering Judgment June 27, 1925. Rehearing Denied Oct. 24, 1925.)

**1. False imprisonment ☞2—Words and acts of detective held to authorize finding of "false imprisonment."**

Evidence that plaintiff, who was mistaken for another woman, was accosted and seized by defendant's detective on suspicion of having defrauded defendant, and compelled to go to defendant's office, where she was detained for 30 minutes, justified submission to jury of question of "false imprisonment," and authorized such finding, since essence of false imprisonment is restraint of liberty of individual without legal warrant under circumstances imposing a restraint that may not be reasonably disregarded.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Imprisonment.]

**2. False imprisonment ☞5—Plaintiff held detained against her will.**

Evidence that defendant's house detective seized plaintiff by arm, took away her packages, claiming she was from city to get plaintiff, and demanded that plaintiff come with her to the office, was sufficient to show detention against will, since plaintiff was not called upon to resist, but had right to assume that detective spoke with legal authority requiring obedience.

**3. Appeal and error ☞1026—Assignments of error not resulting in improper judgment overruled.**

Assignments showing errors committed by court, but which did not amount to such a denial of defendant's rights as were reasonably calculated to cause rendition of improper judgment, will be overruled.

**4. False imprisonment ☞36—$7,500 damages held excessive.**

A verdict of $7,500 damages for false imprisonment to a woman who had previously been nervous, ill, and weak, and whose subsequent illness and distress did not exclusively result from false imprisonment, held excessive by $3,750.

**5. Appeal and error ☞1140(4)—Statute providing for filing of remittitur to have judgment affirmed held mandatory.**

Rev. St. art. 1631, providing that, where court is of opinion that cause should be reversed for excessive verdict only it is its duty to indicate amount of excess to enable party to have judgment affirmed on filing remittitur, is mandatory on court.

**6. Appeal and error ☞1140(4)—Statute providing for remittitur by prevailing party applies to all civil cases, however difficult ascertainment of excess may be.**

Rev. St. art. 1631, though providing no rule for determination of excess of verdict, applies to all civil cases where an excess is found, from whatever cause and however difficult of ascertainment.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit by Mrs. C. E. Caldwell and husband against A. Harris & Co. for damages for false imprisonment. Judgment for plaintiffs, and defendant appeals. Plaintiff having filed a remittitur of excess of verdict, the judgment is reformed and affirmed.

Thompson, Knight, Baker & Harris and Marshall Thomas, all of Dallas, for appellant.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellees.

LOONEY, J. This suit is for damages for false imprisonment. Appellant's answer is the general issue. On a general verdict, judgment in favor of appellees was rendered for $7,500, from which appellant prosecutes this appeal.

It will not be necessary to notice the pleadings of the parties; they were sufficient to admit the evidence adduced, and no question involving the same is presented for our revision.

Appellant in several ways, by appropriate assignments and propositions, challenges the sufficiency of the evidence to establish the fact, as found by the jury, that Mrs. Caldwell, on the occasion in question, was falsely imprisoned or illegally restrained of her liberty by appellant.

The following are the material facts bearing upon this issue:

[1] On October 19, 1922, Mrs. C. E. Caldwell, wife of C. E. Caldwell, resident of the city of Dallas, visited the department store of A. Harris & Co., of the same city, and, after spending some time looking at the display of merchandise, purchased two small articles of neckwear, and was standing at the counter waiting for the saleslady to deliver her packages when a Mrs. Bowers, employed as house detective by appellant, in the discharge of her duty and acting within the scope of her employment, suddenly accosted Mrs. Caldwell, took her firmly by the arm, looking her straight in the eye, said, "You come with me," at the same time taking from Mrs. Caldwell the packages she had just received, refusing to permit appellee to carry her own packages, saying, "No; I will carry them * * * you come with me, you are wanted up in the office, don't make a scene." At this appellee inquired, "What have I done?" The detective answered, "Well, you are wanted up in the office. * * * I am with the city, and they have sent for me to come and get you." And thereupon she asked Mrs. Caldwell, "Are you ———," giving the name of another individual, to which appellee answered, "No; I

am Mrs. C. E. Caldwell." Mrs. Bowers replied, "Yes; Mrs. Caldwell, I know you, you have been identified by the cash girl," and also stated that she had been identified by the floor walker, who was standing near and watching the proceedings, as "the party I want, the little lady with the tan suit and brown hat." Appellee again asked what she had done, and Mrs. Bowers replied, "You come with me," saying that some one had forged a check on C. E. Caldwell in the meantime holding Mrs. Caldwell by the arm, and escorted her around to the elevator. Mrs. Bowers was not with the city nor was she an official but a private employé of appellant, and acted in no other capacity.

Mrs. Caldwell was at the time convalescing from a protracted illness, and was very much shocked, frightened, confused, and humiliated by reason of this experience. She made no attempt to pull loose from Mrs. Bowers, was afraid to do so; any such attempt would have involved her in an unseemly scuffle with the Bowers woman under the gaze of from 50 to 75 customers and employés then in the store. Under compulsion of these circumstances, Mrs. Caldwell submitted to the restraint imposed on her by the house detective and obeyed her orders.

It satisfactorily appears that, prior to the day in question, a young woman, whose name need not be mentioned in this connection, had made purchases of different articles at appellant's store and had them charged to the account of other people, and on the day before she was in the store and made such a fraudulent charge. The credit department of appellant notified the different cashiers, buyers, and managers in the store to be on the lookout for this young woman, and, if discovered, she was to be taken to the office, located on the fifth floor of appellant's mercantile establishment. This young woman was in the store on the day in question and at the same time Mrs. Caldwell was there, had made purchases, attempting to work the fraudulent scheme of having the same charged to other people. The cashier who wrapped the packages for the young woman notified the credit department, and Mrs. Bowers, the house detective, was also notified. It seems that Mrs. Caldwell and the young woman in question were near each other, and Mrs. Bowers, intending to accost the young woman, by mistake accosted Mrs. Caldwell, approached her in the manner before stated, took from her hands the packages, demanded that she accompany her to the office, and escorted her to the elevator and up to the offices on the fifth floor.

In the meantime, this young woman who was under suspicion became restive on account of the delay in receiving her packages from the cashier, was in the act of leaving the building when stopped by Mr. Rosenstein, manager of appellant's gent's furnishing department, and was by him carried for investigation to the offices of the credit department on the fifth floor. The mistake, it seems, was not discovered until Mrs. Bowers had taken Mrs. Caldwell to the offices above mentioned. Mrs. Caldwell was illegally restrained of her liberty altogether about 30 minutes.

Did these facts justify the submission of the issue and authorize the finding of the jury to the effect that Mrs. Caldwell was falsely imprisoned and illegally restrained of her liberty? We think so, clearly. False imprisonment is necessarily a wrongful interference with the personal freedom of an individual. The tort may be committed by acts alone or by words alone, or by both, operating on the will of the individual. It is not at all necessary that there be a confinement in order to constitute false imprisonment, nor that the wrongful act be committed with ill will, malice, wrongful intention, or under color of law, although in the instant case the wrongful detention was accomplished under color of legal authority. The essence of such an offense, and all that is required, is that the individual be restrained of liberty without legal warrant under circumstances either of words or acts, or both combined, that impose such restraint on the individual as may not be reasonably disregarded. M., K. & T. Ry. Co. of Tex. v. Warner, 19 Tex. Civ. App. 463, 49 S. W. 254; Gold v. Campbell, 54 Tex. Civ. App. 269, 117 S. W. 464, 465; Houston & T. C. Ry. Co. v. Roberson (Tex. Civ. App.) 138 S. W. 822, 823; Thompson v. Buchholz, 107 Mo. App. 121, 81 S. W. 490, 491.

Applying this doctrine to the facts of the case, we conclude that the court was justified in submitting the issue of the false imprisonment to the jury, and that the facts fully warranted the verdict.

[2] The wrongful detention of Mrs. Caldwell was accomplished by a combination of words and acts. Mrs. Bowers, appellant's house detective, acting within the scope of her authority, suddenly accosted Mrs. Caldwell while she was making purchases in the store, seized her by the arm, looked her straight in the face, rudely took from her the packages she had purchased, and, at this juncture, said: "You come with me, you are wanted up in the office, don't make a scene; * * * I am with the city and they have sent for me to come and get you;" as much as to say, "I am a public official and what I am now doing and commanding you to do is by legal authority."

In determining whether these words and acts were sufficient to overawe, intimidate, or control the will of appellee, the jury was privileged to look to all the facts and circumstances, including the sex and condition of health of Mrs. Caldwell. She was not called upon to resist, as she had the right to

assume that Mrs. Bowers spoke in terms of the law, and that it was her duty to do as she was bidden by Mrs. Bowers. These facts, in our opinion, show that Mrs. Caldwell was wrongfully detained against her will, for which she is entitled to recover damages.

Appellant urges a number of assignments, based on rulings of the court, that occurred during the progress of the trial, as follows:

(a) That the court erred in allowing Mrs. Gates, the saleslady who waited on Mrs. Caldwell on the occasion in question and witnessed the episode in which the house detective seized Mrs. Caldwell by the arm, took from her the packages, and commanded that she go with her to the office, etc., to testify, over the objection of appellant, that she (the witness) thought that Mrs. Caldwell was a shoplifter.

(b) That the court erred in permitting the same witness to testify, over appellant's objection, that a short time after these occurrences Carmen Thompson, another employé of the appellant, told witness that they, meaning the parties who detained Mrs. Caldwell, realized they had the wrong party.

(c) That the court erred in allowing the same witness to testify, over objections by appellant, to a conversation had between a Mr. Doblin, appellant's superintendent, that took place in his office a short time after the occurrences, in which the witness testified she told Doblin that Mrs. Bowers, the detective, came in between the witness and Mrs. Caldwell and took Mrs. Caldwell's parcels from her and said, "Come go with me," and then took her away.

(d) That the court erred in not sustaining appellant's objection to the closing argument of Alex Pope, Esq., attorney for appellees, in refusing to promptly rebuke counsel for the unauthorized argument and in refusing to withdraw, in so far as was within the power of the court, the effect of the improper and prejudicial argument. This assignment is based on certain statements made in the closing argument for appellees by Mr. Pope, in reply to a preceding argument of Mr. Thomas, attorney for appellant. Mr. Pope said:

"Now, Mr. Thomas said Mrs. Gates testified one way on the witness stand and did not testify that way in her deposition; that is, that she said on the witness stand the impression created in her mind was that probably Mrs. Caldwell was a shoplifter. You remember I tried to read a question from that deposition and Mr. Thomas objected. Will you let me read it now (turning and speaking to counsel for appellant)? If you will let me read it I will prove to this jury that when her deposition was taken she swore what she did when she was on the stand."

Appellant objected to the argument, because the same was an attempt to get before the jury excluded evidence, and was in effect testimony by counsel as to what the witness had testified in her deposition. After some colloquy, the court ordered that the argument of counsel proceed within the record.

[3] We are of the opinion that the court committed errors of law in the respects pointed out in the assignments summarized above, but, after due consideration, we cannot believe that the same were harmful. In our opinion, neither of the errors pointed out amounted to such denial of appellant's rights as was reasonably calculated to cause, nor did it cause, the rendition of an improper judgment. These assignments are therefore overruled.

Appellant makes the further contention that the verdict of the jury is so excessive and out of proportion to the damages actually sustained by Mrs. Caldwell as to evidence a bias or prejudice on the part of the jury, and, for these reasons, a new trial should be granted or that such remittitur as will fit the recovery to the damages actually sustained should be required as a condition of affirmance. The facts bearing on this issue are as follows:

[4] It is apparent from the evidence that Mrs. Caldwell is of a nervous temperament, and for several years prior to October 19, 1922, the day she was wrongfully restrained of her liberty, had been under the treatment of a physician for nervousness and headaches. She had been advised by her physician that, in order to obtain permanent relief, she ought to undergo an operation as soon as her general health would admit of it. For two months prior to October 19, 1922, she had been suffering from a spell of dengue fever, from which, at the time of the occurrence in question, she had not fully recovered. She was at that time, and had been for two months, boarding because she was not physically able to keep house and perform domestic duties.

As the result of the illegal detention, she was very much frightened, confused, and humiliated, suffered severe headaches, had spells of nervousness, was compelled to take to her bed immediately, where she was forced to remain, not all the time, but substantially for three days, and thereafter for about one month was scarcely able to remain out of bed. She was not treated by a physician for the conditions produced by the wrongful detention, but continued to suffer headaches, nervousness, and from sleeplessness and was in that condition at the time of the trial. While this is all true, it cannot be correctly said that these conditions resulted exclusively from the wrongful detention. The evidence is undisputed that she had been suffering from headaches and nervousness for several years, and, according to her own testimony, was at the time of the trial in no worse, although in no better, condition. It is evident that her general health had improved somewhat, in that, for some time

prior to the trial she had been keeping house and performing substantially all her household work and had increased in weight from 96 or 98 pounds, her weight the preceding summer, to 106 pounds, her weight at the time of the trial. However, she is continually distressed with a feeling of humiliation due to the indignities to which she was subjected, broods over the experience, has crying spells, bordering on hysterics, and, while on the streets or in the public gaze, is obsessed with the idea that she is being pointed out and looked at by people as a crook, a shoplifter, and thief.

The jury awarded Mrs. Caldwell a verdict of $7,500 actual damages. As before stated, she was, under the facts, clearly entitled to recover damages but, was this amount authorized? We do not think so. The verdict, in our opinion, is excessive, and, for that reason only, the cause should be reversed.

[5] In this situation, as we understand the law, it is mandatory on the court to indicate to appellees the amount the verdict and judgment is excessive, and afford them an opportunity, by filing a remittitur, to have the judgment reformed and affirmed. Revised Statutes, art. 1631. This statute provides that—

"In all civil cases * * * appealed to any Court of Civil Appeals * * * and such court shall be of the opinion that the verdict and judgment of the trial court is excessive, and for that reason only, said cause should be reversed, then it shall be the duty of such Court of Civil Appeals to indicate to the party in whose favor such judgment was rendered, or his attorneys of record, the amount of the excess of such verdict and judgment; and said court shall, at the same time, indicate to such party, or his attorney, within what time he may file a remittitur of such excess; and, if such remittitur shall be so filed, then the court shall reform and affirm such judgment in accordance therewith; if not filed as indicated, then to be reversed."

To our minds the meaning of this statute is evident and its provisions mandatory. It is immaterial what the causes were that produced the excessive verdict, whether bias, passion, prejudice, erroneous rulings of the court, improper argument of counsel, or any other improper influence of whatever nature, if the verdict is excessive in the opinion of the Court of Civil Appeals, and for that reason only the cause should be reversed, it becomes the duty of the court to indicate the amount of the excess, so as to afford the party in whose favor the judgment was rendered an opportunity to remit and have the judgment reformed and affirmed; otherwise to be reversed and remanded for a new trial.

[6] We are not furnished by the statute a rule by which the excess may be mathematically determined, but the fact that the excess is difficult of ascertainment is no reason why it cannot be determined by the court in the exercise of a sound judicial discretion. It seems that some of our Courts of Civil Appeals, in certain cases, where excess in verdicts was found to exist, for one reason or another have held that the statute above quoted did not apply. Houston Chronicle Pub. Co. v. Wegner (Tex. Civ. App.) 182 S. W. 45, 50; T. & P. Ry. Co. v. Rasmussen (Tex. Civ. App.) 181 S. W. 212, 218, 219; Houston Elec. Co. v. Flattery (Tex. Civ. App.) 217 S. W. 950.

If there ever existed ground for a reasonable doubt that the remittitur statute was intended to apply to "all civil cases" where an excess in the verdict is found to exist, from whatever cause, and however difficult of ascertainment, such doubt should have been dispelled by the construction given the statute by the Supreme Court in Wilson v. Freeman, 108 Tex. 121, 185 S. W. 993, Ann. Cas. 1918D, 1203.

We have carefully considered the other assignments and propositions urged by appellant, but, as they are without merit, are hereby overruled.

As before stated, we are of the opinion that the verdict is excessive, and the excess therein is ascertained by the court to be the sum of $3,750. The clerk of this court is hereby directed to notify appellees, or their attorneys of record, that this court holds the verdict and judgment excessive in the sum above indicated, and they are privileged to file among the papers of this cause, on or before Friday, June 26, 1925, a remittitur of such excess, and, if the same shall be filed by appellees within the time mentioned, the judgment of the trial court will be reformed and, as reformed, will be affirmed; but, if the remittitur is not filed as indicated, the cause will be reversed and remanded to the trial court.

Affirmed conditionally.

### Order Reforming and Rendering Judgment.

Appellees having within the time prescribed by the court, filed a remittitur of $3,750, the excess ascertained to exist in the verdict of the jury and judgment of the court below, the judgment therefore is reformed by reducing the amount of recovery by $3,750, and, as reformed, judgment is here rendered in favor of appellees against appellant and the sureties on its supersedeas bond, for the sum of $3,750 with 6 per cent. interest from the 1st day of April, 1924, the date of the judgment below, and all costs created in this and the trial court.

Reformed and affirmed.